1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   CARL M. SHORT,                         No. 2:14-CV-2141-CMK

12              Plaintiff,

13       vs.                                <u>MEMORANDUM OPINION AND ORDER</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,

15              Defendant.

16   _____ /

17

18              Plaintiff, who is proceeding with retained counsel, brings this action under

19   42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20   Pursuant to the written consent of all parties, this case is before the undersigned as the presiding

21   judge for all purposes, including entry of final judgment.  <u>See</u> 28 U.S.C. § 636(c).  Pending

22   before the court are plaintiff's motion for summary judgment (Doc. 14) and defendant's cross-

23   motion for summary judgment (Doc. 15).

24   / / /

25   / / /

26   / / /

                                              1

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on April 27, 2011.  In the application, plaintiff claims that disability began on June 1, 2004.  Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on March 20, 2013, before Administrative Law Judge ("ALJ") Peter F. Belli.   In an April 22, 2013, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1.   The claimant has the following severe impairment(s): cervical spinal stenosis, degenerative disc disease of the cervical spine, lumbago, migraine headaches, bilateral shoulder and knee pain, adjustment disorder, anxiety, and polysubstance dependence in remission;

2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.   The claimant has the following residual functional capacity: the claimant can perform light work; the claimant can lift, carry, push, and/or pull 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8-hour workday with normal breaks; sit for 8 hours in an 8-hour workday with normal breaks; never climb ladders, ropes, and scaffolds; occasionally stoop, crouch, and kneel, but never crawl; can frequently reach in all directions with the right upper extremity; can frequently twist, flex, and extend the cervical spine or neck; no prolonged looking down, but can look down for 10-15 minutes at a time and then needs to change positions; and no working in constant extreme temperatures; the claimant has no limitations in his ability to receive, understand, remember, and carry out simple job instructions; can occasionally perform detailed job instructions, but not complex job instructions; he is able to interact appropriately with the general public, co-workers, and supervisors; the claimant is able to make adjustments to simple work place changes and is able to make simple work place judgments; and

4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on June 5, 2014, this appeal followed.

/ / /

/ / /

/ / /

## II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to provide sufficient reasons for rejecting plaintiff's credibility; (2) the ALJ failed to properly evaluate the medical opinions; and (3) the ALJ failed to consider whether plaintiff's impairments met or medically equaled Listing 11.03.

/ / /

### A.   <u>Plaintiff's Credibility</u>

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See <u>Saelee v. Chater</u>, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See <u>Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  <u>See id.</u>  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  <u>See id.</u>; <u>see also</u> <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing <u>Lingenfelter v Astrue</u>, 504 F.3d 1028, 1936 (9th Cir. 2007), and <u>Gregor v. Barnhart</u>, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in <u>Smolen v. Chater</u>:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the <u>Cotton</u> test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in <u>Cotton v. Bowen</u>, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See <u>Bunnell</u>, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

4

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5)

physician and third-party testimony about the nature, severity, and effect of symptoms.  See

Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the

claimant cooperated during physical examinations or provided conflicting statements concerning

drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the

claimant testifies as to symptoms greater than would normally be produced by a given

impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See

Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

        Regarding reliance on a claimant's daily activities to find testimony of disabling

pain not credible, the Social Security Act does not require that disability claimants be utterly

incapacitated.  See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989).  The Ninth Circuit has

repeatedly held that the   ". . . mere fact that a plaintiff has carried out certain daily activities . . .

does not . . .[necessarily] detract from her credibility as to her overall disability."  See Orn v.

Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th

Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a

claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic

restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the

claimant was entitled to benefits based on constant leg and back pain despite the claimant's

ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home

activities are not easily transferable to what may be the more grueling environment of the

workplace, where it might be impossible to periodically rest or take medication").   Daily

activities must be such that they show that the claimant is ". . .able to spend a substantial part of

his day engaged in pursuits involving the performance of physical functions that are transferable

to a work setting."  Fair, 885 F.2d at 603.  The ALJ must make specific findings in this regard

before relying on daily activities to find a claimant's pain testimony not credible.  See Burch v.

1   Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

2           The ALJ provided the following summary of plaintiff's subjective complaints:

3           The claimant alleges that he has cervical spinal stenosis, degenerative disc
            disease of the cervical spine, lumbago, migraine headaches, bilateral
4           shoulder pain, adjustment disorder, anxiety, and polysubstance abuse in
            remission.  Because of his impairments, the claimant is unable to work.
5           The claimant testified he has pain in his neck, shoulders, and back and
            arthritis in his knees.  The claimant testified his neck pain radiates into his
6           arms and fingers with numbness and [difficulty] handling small objects.
            The claimant testified he has back pain that radiates in his legs and feet
7           and is not able to get restful sleep at night.  The claimant testified he has
            never gone longer than three days without having migraine headaches and
8           has headaches almost daily.  The claimant testified that physically he can
            stand for 10 minutes; sit for 35 minutes; lift about 20 pounds; walk about a
9           block; would need more breaks; and would miss 3-6 days a month.  The
            claimant [reported] daily pain and is reliant on his pain medications for
10          pain relief.  The claimant has problems with lifting, squatting, bending,
            standing, walking, sitting, stair climbing, memory, completing tasks,
11          concentration, hollowing instructions, and does not handle stress very well
            (Exhibit B4E, B5E, B10E, B11E, Testimony, 03/20/2013).

12

13   After providing a lengthy discussion of the objective medical evidence, the ALJ stated as follows

14   with respect to plaintiff's credibility:

15          Based on the review of the evidence above, the undersigned finds that the
            claimant's account of the severity of symptoms, as well as his allegations
16          regarding functional limitations, are not fully credible for the following
            reasons:
17
            In regards to claimant's physical impairments described above, the
18          minimal and sporadic medical records are inconsistent with claimant's
            allegations.  A review of the medical records and medical imageries do not
19          support claimant's allegations of chronic neck, back, right shoulder, and
            knee pain, and show that the claimant's migraine headaches are under
20          control with medication compliance (Exhibit B12F, B13F, B18F-B20F).

21          A review of the 2011 Anderson Physical Therapy notes stated the
            following: The 09/07/2011 notes stated the claimant's shoulder stiffens up
22          two to three days after physical exercise and work but was not currently
            working (Exhibit B12F/2, B13F/19).  The 11/07/2011 notes stated the
23          claimant was not consistently icing his shoulder (Exhibit B12F/8, 8).  The
            11/16/2011 notes stated the claimant had no new complaints (Exhibit
24          B12F/7).  The 11/18/2011 notes stated the claimant was in a lot more pain
            today from unknown cause but was not doing icing (Exhibit B12F/8).  The
25          12/02/2011 discharge note stated the claimant was being discharged from
            physical therapy with home exercise program (Exhibit B12F/10, B13F/18).

26

A review of the 2011 and 2012 Shasta Community Health Center treatment records stated the following: On 03/24/2011, the claimant reported his migraines greatly improved on Amitriptyline [and he] had his appetite back.  The claimant reported neck and back pain, and the musculoskeletal physical exam found cervical spine had tenderness and muscle spasms and lumbar spine had muscle spasms but mild pain with motion; no thoracic spine tenderness and normal mobility and curvature (Exhibit B13F/12).  On 06/24/2011, the claimant reported right shoulder pain greater than left shoulder pain and bilateral knee pain; and migraines but medicine was working pretty well.  The claimant was on opioid pain management and reported improved function and no medical side effect.  The musculoskeletal physical exam showed mild left shoulder pain with motion; moderate right shoulder pain with motion; right and left knee crepitus; and x-rays of the shoulder and knees were ordered (Exhibit B13F/10).  On 08/24/2011, the claimant reported right shoulder pain with shoulder bones grinding together.  The claimant was on opioid pain management and reported improved function and no medication side effect.  The claimant was able to lift arms 50 degrees with no pain; the x-rays showed AC and glenohumeral articulations were within normal limits bilaterally, no abnormal soft tissue calcifications, and no fracture; and given a referral to physical therapy (Exhibit B13F/7).  On 10/26/2011, the claimant reported that his migraine headaches are under control with 75 mg of Amitriptyline.  The claimant was on opioid pain management and reported improved function and no medication side effect (Exhibit B13F/3).  On 12/14/2011, the claimant reported right shoulder pain that was no better.  The claimant was on opioid pain management and reported improved function, no medication side effect, and that he was out of pain medication.  The musculoskeletal physical exam showed right shoulder with pain that limited motion both passive and active and was given an injection (Exhibit B13F/1).

On 02/01/2012, the claimant reported that injections helped his right shoulder pain for a week; his back pain was not quite as bad; has some neck stiffness; pain was tolerable with Norco; and his migraines were better with Amitriptyline but still got them when he forgets his night dose of medications or forgets to wear his glasses.  The claimant was on opioid pain management and reported improved function and no medication side effect (Exhibit B18F/31).  On 03/28/2012, the claimant noted he had been feeling pretty well over all but still got headaches but not as bad as he did before starting Amitriptyline.  The claimant was on opioid pain management and reported improved function and no medication side effect (Exhibit B18F/27).  The 04/26/2012 the [sic] notes the claimant had been on Topamax for his migraine headaches and reported headaches on his left side.  The physical examination was normal with normal range of motion in all joints.  The claimant migraine headaches caused suboccipital tenderness on both sides and was started on Depakote with Kenalog injection (Exhibit B18F/24, 26).  On 04/30/2012, the claimant reported right shoulder and neck pain, and some numbness and tingling in his upper extremities but stated he was doing okay (Exhibit B18F/23).  On 06/28/2012, the claimant reported back and right shoulder pain that he takes Norco, Baclofen, and ibuprofen for pain; and continues to take

Depakote for his headaches.  The claimant was on opioid pain management and reported improved function and no medication side effect.  On 09/26/2012, the claimant reported chronic pain in his shoulder, back, and neck with twitching and spasms; neuropathy in both hands with frequent dropping; and taking Norco and marijuana for pain management.  The claimant was on opioid pain management and reported improved function and no medication side effect (Exhibit B18F/8).  On 10/11/2012, the claimant reported he has a history of headaches, which has been better by 50% with Depakote and Kenalog injection.  The physical examination was normal with normal range of motion in all joints.  The notes stated the claimant's headaches were better by 50%; he would be given another Kenalog injection and Depakote (Exhibit B18F/6-7).  On 12/13/2012, the claimant reported severe migraine headaches and a lot of pain with his shoulder after running out of Depakote.  The claimant was restarted on Depakote and advised not to run out of medication again (Exhibit B18F/2).

During the examination with Dr. Kinnison, the claimant reported problems with his low back and neck; headaches on a 24/7 basis; bilateral knee pain with rest or walking; and difficulties with his hand swelling (Exhibit B3F/1-2).  Dr. Kinnison observed the claimant was friendly and cooperative and no acute distress; ambulated normally; sat comfortably; moved about the exam room without problems; went from sitting to supine to sitting without difficulties; good coordination; negative Romberg testing; normal gait; and not using an assistive device (Exhibit B3F/2-3).  The examination of the claimant's neck was supple without adenopathy, thyromegaly, or masses; and had normal range of motion of the cervical and lumbar spine, hips, knees, ankles, shoulders, elbows wrists, fingers, and thumbs (Exhibit B3F/3-4).  The claimant's straight-leg was negative bilaterally from the supine position and had intact sensation to touch and pin (Exhibit B3F/4).  Dr. Kinnison opined the claimant's general findings showed a normal exam (Exhibit B3F/4).

In regards to the claimant's mental impairments described above, the records are inconsistent with the claimant's allegations.  The minimal and sporadic mental health records are devoid of any mental health treatments and individual or group therapy sessions with a psychiatrist or psychologist related to the claimant's allegations of depression and anxiety.  Further, the claimant's psychiatric exams and mental status exams showed normal findings without psychotropic medications (Exhibit B12F, B13F, B18F-B20F).  At the hearing, the claimant testified that he has not had psychiatric treatments (Hearing Testimony, 03/20/2013).

The 2011 and 2012 Shasta Community Health Center mental health records stated that on 03/24/2011, 06/24/2011, 08/24/2011, 12/14/2011, 02/01/2012, 03/28/2012, 06/28/2012, and 09/26/2012 psychiatric exam stated the claimant had normal affect and thought content and appropriate speech (Exhibit B13F/1, 4, 7, 10, 12, B18F/8, 14, 27, 31).  The 04/26/2012 and 10/11/2012 mental status stated the claimant was awake, alert, oriented times three, and intact language and speech (Exhibit B18F/6, 24).  On 12/13/2012, the claimant reported severe anxiety and panic attacks

after he ran out of Depakote.  The psychiatric exam stated the claimant had normal affect and thought content and appropriate speech.  The claimant was restarted on Depakote and advised not to run out of medication again (Exhibit B18F/2).

During the examination with Dr. Maguire, the claimant did not report any history of any psychiatric disorder symptoms (Exhibit B4F/1).  Dr. Maguire noted the review of the records consisted of a primary medical doctor note that did not list any mental disorder symptoms and a 2-page summary consisting of medical issues, health issues, and his attorney's opinion (Exhibit B4F/1).  Dr. Maguire noted the claimant had appropriate grooming, hygiene, and dress; was polite, cooperative, and made appropriate eye contact; had appropriate attitude and behavior, mood and affect; normal stream of mental activity and speech; no impairment in thought content; was oriented to time, date, month, year, city, person, and place; adequate immediate, recent, and past memory, fund of knowledge, concentration, abstract thinking, similarities and differences; and fair insight and judgment (Exhibit B4F/2-3).  Dr. Maguire found the claimant's concentration, persistence, and pace were within normal limits after the claimant was able to follow a three-step command and spell money both forward and backwards (Exhibit B4F/2-3).  Dr. Maguire noted the claimant was able to perform immediate digit span forward and backwards despite his lack of education; recalled 2/3 objects after one minute; and his long-term memory did not seem to be impaired (Exhibit B4F/3).  Dr. Maguire opined the claimant did not have a . . . mental disorder and his prognosis was good (Exhibit B4F/3).

The overall minimal and sporadic medical treatment record, mental status examinations, and claimant's testimony challenge a finding that the claimant is completely credible and show his physical and mental impairments are not as limiting and debilitating as he alleges.  The various medical imageries related to claimant's head, cervical spine, lumbar spine, shoulders, and knees; and the nerve conduction study and EMG; all showed normal to mild findings.  Further, there are no mental health treatment records to support claimant's allegations of depression and anxiety.  The claimant is still able to perform light exertional work with the non-exertional limitations described above.

According to plaintiff, the ALJ merely used boilerplate language and general statements to analyze plaintiff's credibility.  Plaintiff argues:

> ALJ Belli's error here is his refusal to address all of the evidence, explain the reasoning behind the decision to credit some evidence over the contrary evidence, and provide an honest rendition of the evidence he evaluate[s], such that we could understand the ALJ's logical bridge between the evidence and the conclusion.  By failing to even acknowledge the evidence, the ALJ deprived this Court of any means to assess the validity of his reasoning process.

/ / /

The court does not agree.  In fact, as can be seen by the ALJ's detailed analysis cited above, the ALJ went far beyond mere boilerplate in discussing the credibility of plaintiff's subjective statements.  The ALJ provided specific reasons for rejecting plaintiff's statements as not entirely credible.  In particular, the ALJ noted minimal and sporadic treatment records, as well as the unremarkable objective findings where there were any.

**B.** **Evaluation of Medical Opinions**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a

1  finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and

2  legitimate reasons, the Commissioner must defer to the opinion of a treating or examining

3  professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,

4  without other evidence, is insufficient to reject the opinion of a treating or examining

5  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

6  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

7  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);

8  see also Magallanes, 881 F.2d at 751.

9          Though not entirely clear, it appears that plaintiff is challenging the ALJ's

10  analysis of the opinions of non-examining psychiatrist Dr. Ying regarding plaintiff's migraine

11  headaches.  Plaintiff also argues that the ALJ "ignored all of Mr. Short's treating physicians'

12  opinions."

13          1.      Dr. Ying

14          As to Dr. Ying, the ALJ stated:

15  The State agency non-examining psychiatrist, K. Ying, M.D., diagnosed
    the claimant with adjustment disorder and history of methamphetamine
16  dependence (Exhibit B8F/5, 10).  Dr. Ying opined the claimant had mild
    limitations in activities of daily living and maintaining social functioning;
17  moderate limitations in maintaining concentration, persistence, or pace;
    and no episodes of decompensation (Exhibit B8F/12).  Dr. Ying opined
18  the claimant had moderate limitations in his ability to understand,
    remember, and carry out detailed instructions; maintain attention and
19  concentration for extended periods; perform activities within a schedule;
    maintain regular attendance and be punctual within customary tolerances;
20  complete a normal workday and workweek without interruptions from
    psychologically based symptoms; perform at a consistent pace without an
21  unreasonable number and length of rest periods; respond appropriate to
    changes in the work setting; and set realistic goals or make plans
22  independently of others (Exhibit B7F).  Dr. Ying opined the claimant's
    migraines were under good control and able to sustain concentration; and
23  able to adapt to changes and make simple decisions (Exhibit B8F/14).  The
    State agency non-examining psychologist, C. Janssen, Ph.D., affirmed Dr.
24  Ying's opinion above (Exhibit B15F).

25  ///

26  ///

The ALJ gave great weight to Dr. Ying's opinions, noting that it is consistent with the opinions of examining consultative psychologist Dr. McGuire.  According to plaintiff, the ALJ's statement that Dr. Ying opined that plaintiff's migraines were under "good control" misrepresents the doctor's actual statement: "If his migraines are under good control, he should be able to sustain [concentration, persistence, pace] for 40hr work wks."

A review of the record reflects that plaintiff is correct that the ALJ misstated Dr. Ying's opinion regarding migraines.  Specifically, contrary to the ALJ's summary of the doctor's opinion, Dr. Ying did not opine that plaintiff's migraines were under good control.  As plaintiff notes, Dr. Ying's statement was conditional – if his migraines were under control with medication, plaintiff would be able to maintain concentration, persistence, and pace for a normal workweek.  However, Dr. Ying also stated parenthetically: "[S]everity of migraines to be determined by other specialty."

No other doctor who examined plaintiff opined that plaintiff's migraine headaches were so severe as to interfere with the mental demands of sustained work.  Specifically, plaintiff reported no problems associated with headaches to agency examining physician Dr. McGuire, who opined that plaintiff has the ability to perform simple and repetitive tasks, accept instructions from supervisors and interact with co-workers, and perform work activities on a consistent basis.  Moreover, plaintiff's treatment notes consistently reflect that his migraines were better with medication (Amitriptyline).  Though Dr. Ying did not himself specifically state that plaintiff's migraines were under control with medication, the record reveals that they were.  Therefore, the condition precedent for Dr. Ying's opinion – that plaintiff's migraines were under control – is satisfied and the remainder of the doctor's opinion – that plaintiff would be able to maintain concentration, persistence, and pace – is valid.  Viewing the record as a whole, the court finds no error in the ALJ's reliance on Dr. Ying's assessment.

/ / /

/ / /

2.     Treating Physicians

Plaintiff argues that the "ALJ gave no explanation at all, let alone a valid one, for rejecting all of Mr. Short's treating physician's opinions." Plaintiff, however, points to no treating source opinions regarding the effects of plaintiff's migraines on his ability to work. Instead, plaintiff notes numerous portions of the treating source records where plaintiff is noted to complain of migraines and medication is prescribed. It is undisputed that plaintiff suffers from migraines. However, plaintiff has not met his burden of providing medical opinion evidence as to the effects of his migraines. The only medical opinions of record in this regard – the agency examining and non-examining sources – agree that, despite migraines, plaintiff retains the functional capacity to perform work activities.

**C.    Listing 11.03**

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity. Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d). In meeting or equaling a listing, all the requirements of that listing must be met. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

According to plaintiff:

Mr. Short's migraines met or equal Listing 11.03. ECF 15 at 26.[1] This Listing requires "nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The seizures must occur "more frequently than once weekly in spite of at least 3 months of prescribed treatment," and they must be accompanied by "alteration of awareness or loss of consciousness and transient postictal

---

[1]     Plaintiff's citation in his brief to this docket entry is puzzling. Electronic case filing entry 15 is defendant's brief in opposition, which was filed _after_ plaintiff's brief. It is curious that plaintiff cites to a docket entry which did not exist as of the time plaintiff filed his brief. Further, defendant's brief makes no reference to Listing 11.03 at page 26.

1    manifestations of unconventional behavior or significant interference with
2    activity during the day." *Id.*

3    Plaintiff argues that his migraine headaches meet or medically equal this listing because he

4    experienced chronic migraine headaches almost daily which caused him to miss work three to six

5    times a month.  Plaintiff also argues that he meets or medically equals Listing 11.03 because "he

6    has gone only 3 consecutive days in a row over the last two years without having a migraine

7    headache" and that his headaches "last anywhere from a half hour to three days duration."

8    Plaintiff adds that Listing 11.03 applies because he "used a wide array of prescription medication

9    to try to resolve his headaches."  Next, plaintiff argues that Listing 11.03 applies in this case

10   because his headaches "are excruciating with nausea, vomiting, sensitivity to light and noise."

11   Finally, plaintiff argues that Listing 11.03 applies because his migraines interfere with his

12   activities of daily living.

13              Plaintiff's equivalency argument – which the court notes was never raised before

14   the agency – is based entirely on the following example contained in the Social Security

15   Administration's Program Operations Manual System ("POMS"):

16              A claimant has chronic migraine headaches for which she sees her treating
               doctor on a regular basis.  Her symptoms include, aura, alteration of
17             awareness, and intense headache with throbbing and severe pain.  She has
               nausea and photophobia and must lie down in a dark and quiet room for
18             relief.  Her headaches last anywhere from 4 to 72 hours and occur at least
               2 times or more weekly.  Due to all of her symptoms, she has difficulty
19             performing her [activities of daily living].  The claimant takes medication
               as her doctor prescribes.  The findings of the claimant's impairment are
20             very similar to those of 11.03, Epilepsy, nonconvulsive.  Therefore, 11.03
               is the most closely analogous listed impairment.  Her findings are at least
21             of equal medical significance as those of the most closely analogous listed
               impairment.  Therefore, the claimant's impairment medically equals listing
22             11.03.

23   Plaintiff argues that he submitted evidence "likely satisfying the criteria of Listing 11.03" based

24   on the POMS example and concludes that the ALJ's failure to discuss Listing 11.03 at all

25   requires remand.

26   ///

1    The court does not agree.  Assuming, as plaintiff argues, that the above POMS

2  example controls, plaintiff has not presented evidence that he satisfies all of the criteria listed in

3  the example.  Specifically, the POMS example cited by plaintiff requires symptoms which

4  include aura and alteration of awareness.  Plaintiff has presented no evidence in this regard.

5  Likewise, the POMS example indicates that the claimant takes medication as prescribed.  In

6  contrast, the evidence in this case indicates that plaintiff often failed to take prescribed

7  medication.  Finally, turning to the actual listings, Listing 11.03 requires a detailed description of

8  a typical seizure pattern, including all associated phenomena, with alteration of awareness or loss

9  of consciousness.  See 20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 11.03.  Again, plaintiff has

10  not identified any medical evidence describing in detail a typical seizure pattern, or of alteration

11  of awareness or loss of consciousness.

12

13                              **IV.  CONCLUSION**

14            Based on the foregoing, the court concludes that the Commissioner's final

15  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

16  ORDERED that:

17            1.      Plaintiff's motion for summary judgment (Doc. 14) is denied;

18            2.      Defendant's cross-motion for summary judgment (Doc. 15) is granted; and

19            3.      The Clerk of the Court is directed to enter judgment and close this file.

20

21

22  DATED:  September 28, 2016

23                                          _____
                                            **CRAIG M. KELLISON**
24                                          UNITED STATES MAGISTRATE JUDGE

25

26